# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

BURNADETTE D. BURNS,                    :

     Plaintiff,                         :
                               Case No. 3:14cv00153

 vs.                                     :

                               District Judge Thomas M. Rose

CAROLYN W. COLVIN,                      :    Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                :

     Defendant.                         :

## REPORT AND RECOMMENDATIONS[1]

## I.    <u>Introduction</u>

Plaintiff Burnadette D. Burns filed an application on May 24, 2011 seeking

Supplemental Security Income.  She asserted that she was under a benefits-qualifying

disability – starting on May 24, 2011 – due to schizoaffective disorder, rheumatoid

arthritis, high blood pressure, and bipolar disorder.  Administrative Law Judge (ALJ)

Regina L. Warren found that Plaintiff's severe mental impairments did not include

schizoaffective disorder, but she did have an affective disorder, bipolar type, and other

severe impairments.  ALJ Warren also found that Plaintiff could perform a significant

number of jobs that exist in the national economy.  These findings, together with others,

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

led ALJ Warren to deny Plaintiff's application on the main ground that she was not under a benefits-qualifying disability.  Plaintiff brings this case challenging the denial of her application for Supplemental Security Income.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record (Doc. #6), and the record as a whole.

## II.  Plaintiff's Vocational Profile and Testimony

On the date Plaintiff filed her application for benefits, she was 44 years old, placing her in the category of a younger person under Social Security regulation.  She has a 5th grade education and has worked in the past as a cashier, a cleaner, and a telemarketer.

During an administrative hearing conducted by ALJ Warren, Plaintiff testified about her physical and mental limitations and about her daily activities.  In the present case, she focuses on the ALJ's findings concerning her mental limitations and the opinions provided by her treating psychiatrist, Dr. Patel.

Plaintiff testified that her psychiatric conditions cause her to "go up and down." (*PageID# 71*).  She cannot deal with anyone being around her.  She explains, "it just doesn't feel safe and I just like being by myself....  I have to be by myself because I always get things mixed up ...."  *Id*.  She feels threatened when she is around others and does not interact with people in public.  She testified, "I go to my family and one guy that's my guardian angel friend that takes me to all my doctors' appointments and stuff as long as I

2

buy gas for him." (*PageID*# 72).

Plaintiff has difficulty paying attention and concentrating.  When a lot of things are happening, she does not really understand unless somebody provides her with a simple explanation.  It is difficult for her to "catch on and ... uphold [her] duties...." (*PageID*# 73).

As to Plaintiff's daily activities, she talks on the phone with her sons.  She watches TV.  When she is not busy she does not bathe or groom herself daily because she does not see why she should.  (*PageID*# 76).  A friend takes her to buy groceries once per month.  Plaintiff does not drive.  She does her laundry at her mother's house.  She likes to go fishing with her friend about 3 times a month.  She attends church occasionally.  Although she used to go often, it doesn't "feel right" to her.  (*PageID*# 81).

Turning to the medical evidence, a detailed description is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have discussed the relevant records with citations to specific evidence. The Commissioner likewise defers to the ALJ's discussion of the relevant medical evidence.

III.    **"Disability" Defined**
       **and ALJ Warren's Decision**

The Social Security Administration provides Supplemental Security Income to indigent individuals subject to several eligibility requirements.  Chief among these requires an applicant to be a "disabled individual."  42 U.S.C. § 1381a; *see Bowen v. City of New*

3

*York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[2]  42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine if Plaintiff is eligible Supplemental Security Income, ALJ Warren employed the Social Security Administration's 5-step sequential evaluation.  *See* 20 C.F.R. §416.920(a)(4); *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The most significant step for present purposes arose at step 4 where ALJ Warren concluded that the most Plaintiff could do despite her mental limitations – her so-called mental residual functional capacity[3] – consisted of the following:

> She can understand, remember and carry out one to two step instructions, ask simple questions and request assistance, respond appropriately to supervisors and co-workers in jobs that do not require independent decision making, she can be around co-workers throughout the day but interpersonal contact should be incidental to work performance, and she can have no contact with the public.  She can perform simple, routine, repetitive tasks and maintain concentration, persistence or pace for two-hour periods throughout the day with normal breaks.  She can have only few workplace changes with gradual introduction.

(Doc. #6, *PageID*# 46).  With these abilities in mind, the ALJ concluded that Plaintiff

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

[3] *See* 20 C.F.R. §404.1545(a); *see also Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

could not perform her past relevant work as a cashier, babysitter, or housekeeper.  This led the ALJ to step 5 of the sequential evaluation where she found that given Plaintiff's age, education, work experience, and residual functional capacity, she could do a significant number of jobs that exist in the national and Ohio economies, including hand sorter and assembler.

The sum and substance of the ALJ's sequential findings led her to conclude that Plaintiff was not eligible for benefits because she was not under a benefit-qualifying disability.

**IV.    Judicial Review**

The Social Security Administration's denial of Plaintiff's application for benefits – here, embodied in ALJ Warren's decision – is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings.  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting her factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec.*, 486

F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90

(6th Cir. 1999).  Instead, substantial evidence supports the ALJ's factual findings when "a

'reasonable mind might accept the relevant evidence as adequate to support a

conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375

F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of

evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

**V.      Discussion**

**A.      Medical Source Opinions**

Plaintiff contends that the ALJ erred by not evaluating the opinions provided by Dr.

Patel, her treating psychiatrist, under the treating physician rule.  She asserts that Dr.

Patel's treatment notes were consistent with his opinions and that the ALJ "grossly

mischaracterized" the record by finding otherwise.  Plaintiff also argues that substantial

evidence does not contradict Dr. Patel's opinions.

The Commissioner contends that the ALJ properly assigned great weight to the

medical opinions of the state agency psychologists, Dr. Katz and Dr. Dietz, and properly

reviewed the entire record including exhibits that the state agency psychologists lacked

access to.

Social security regulations recognize several different types of medical sources:

treating physicians, nontreating yet examining physicians, and nontreating/record-

reviewing physicians.  *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

6

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing, in part, 20 C.F.R. §§ 404.1527(c)(1) and (2) (eff. April 1, 2012)).[4] To effect this hierarchy, the Regulations adopt the treating physician rule. *See Gayheart*, 710 F.3d at 375; *see also Rogers*, 486 F.3d at 242. The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. §404.1527(c)(2)); *see Gentry*, 741 F.3d at 723. If both conditions do not exist, the ALJ's review must continue:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

*Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.

---

[4] The Social Security Administration has re-lettered 20 C.F.R. §404.1527 without altering the treating physician rule or other legal standards. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 6th Cir. 2014). The re-lettered version applies to decisions, like ALJ Warren's decision, issued on or after April 1, 2012.

2004)).

Plaintiff's treating psychiatrist Dr. Patel completed questionnaires in December 2011. (*PageID*#s 657-67). He diagnosed Plaintiff with schizoaffective disorder bipolar type. (*PageID*# 660). In support of this, Dr. Patel provided checkmarks indicating that Plaintiff has sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, paranoia or inappropriate suspiciousness, difficulty concentrating, perceptual disturbances, and manic syndrome. (*PageID*# 661). Her primary symptoms, according to Dr. Patel, are mood swings, anger, anxiety, paranoia, and poor frustration tolerance. (*PageID*# 662). In several areas, Dr. Patel found Plaintiff to be mildly limited, including the ability to carry out simple 1- or 2-step instruction, to ask simple questions or request assistance, and to travel to unfamiliar places or use public transportation. (*PageID*#s 663-65). Dr. Patel opined that Plaintiff was moderately limited in her ability to remember locations and work-like procedures; to understand and remember 1- or 2-step instructions; to make simple work-related decisions; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to be aware of normal hazards and take appropriate precautions; and to set realistic goals or make plans independently. *Id*.

In the remaining categories of work activities, Dr. Patel found Plaintiff to be markedly limited. This included her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and

8

be punctual within customary tolerances; to sustain ordinary work routine without supervision; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting.  (*PageID*#s 663-65).

Dr. Patel further opined that Plaintiff experiences episodes of deterioration or decompensation.  He explained that she had been frequently fired from previous jobs due to her anger, poor patience, and decreased concentration.  He indicated that Plaintiff was not a malinger and that she was incapable of tolerating even low-stress work.  He expected Plaintiff's ongoing mental work impairments to last at least 12 months.  He reported that her impairments were likely to cause good days and bad days, and her impairments would likely require her to be absent from work 3 days per month.  In the end, Dr. Patel concluded that Plaintiff is "unlikely to find or keep any meaningful employment." (*PageID*# 667).

In October 2012, Dr. Patel completed another psychiatric impairment questionnaire (*PageID*#s 745-54).  He again diagnosed Plaintiff with schizoaffective disorder bipolar type.  He checked various positive clinical findings supporting his diagnosis such as sleep disturbances, mood disturbances, emotional lability, delusions or hallucinations,

psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, perceptual disturbances, generalized persistence anxiety, and hostility and irritability. Dr. Patel wrote, "Has anger problems," mood swings, and crying spells in the past. (*PageID*# 746). Dr. Patel reported that Plaintiff has required 3 hospitalizations (last time in 2009) due to her psychiatric symptoms. (*PageID*# 747). His assessment of Plaintiff's mental work abilities appears identical to his previous December 2011 assessment including, for instance, marked limitations in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workweek without interruptions from her psychiatric symptoms. (*PageID*#s 748-50). As in December 2011, Dr. Patel opined that Plaintiff was not a malingerer and that she could not tolerate even low-stress work due to very low frustration tolerance. (*PageID*# 751). According to Dr. Patel, Plaintiff was likely to have good days and bad days and, as a result, to be absent from work more than 3 times per month due to psychiatric impairments or treatment. (*PageID*#s 751-52).

The ALJ recognized that "Dr. Patel's function-by-function assessments (Exhibits C7F, C8F, C12F), if supported by the record, would indicate that the claimant would not be able to perform work at any exertional level as a result of marked limitations in the ability to perform mental work-related tasks. However, Dr. Patel's treatment records do not indicate the same level of severity of symptoms." (Doc. #6, *PageID* at 49).

10

Substantial evidence does not support the ALJ's reading of Dr. Patel's treatment records, which are consistent with the basis of his opinion concerning Plaintiff's marked mental work limitations. Dr. Patel stated that his opinions were based on perceptual disturbances, sleep disturbance, mood disturbance, emotional lability, delusions or hallucinations, substance dependence, manic syndrome, recurrent panic attacks, paranoia or inappropriate suspiciousness, and difficulty thinking or concentrating. (*PageID*# 661). This is consistent with treatment records that documented findings of rapid/loud speech, an anxious/fair mood, an anxious/labile affect, persecutory delusions, and paranoia. (*PageID*#s 605-06, 610-11). The ALJ, moreover, overlooked or ignored Dr. Patel's explanation of his session with Plaintiff in September 2011. He noted that (1) Plaintiff reported hearing voices; (2) her mother kicked her out of the house "because of some misunderstanding"; and (3) she complained of increased mood swings, anxiety, and lability. (*PageID*# 722). When Dr. Patel performed a mental status examination, he found Plaintiff's mood to be anxious, her affect was labile, and her delusions were persecutory. (*PageID*#s 722-23). These, and similar findings by Dr. Patel on other occasions, are not normal findings. To the contrary, they document that Dr. Patel based his opinions on appropriate psychiatric signs and symptoms. It was, moreover, error for the ALJ to overlook or ignore these aspects of Dr. Patel's treatment records. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the

record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)).

The ALJ also declined to credit Dr. Patel's opinion by explaining that Plaintiff reported in March 2012 – in the ALJ's words – Plaintiff "had no interest in working (Exhibit C11F, p.2), and preferred to try to obtain Social Security benefits and Medicaid. (Exhibit C11F, p. 4)."  (Doc. #6, *PageID*# 50).  One problem with these reasons is that the way the ALJ described them implies, at a minimum, that because Plaintiff has no interest in working, she seeks SSI and Medicaid.  This is not a fair reading of the two separate notes upon which the ALJ relied.  The first note appears in Dr. Patel's updated narrative that contains a list of 28 items.  (*PageID*#s 718-19). Although one item says that Plaintiff has no interest in working, it contains no other information indicating that her lack of interest caused her to seek Social Security benefits or Medicaid, or that she was being disingenuous or unscrupulous.  Rather, its inclusion in the list tends to indicate that it is another of her ongoing mental-health symptoms.  In addition, it is followed by the phrase, fear "of school," thus presenting another psychiatric hurdle to re-employment.  (*PageID*# 718).  The other note the ALJ referred to – stating Plaintiff wants SSI and medicaid – appears under the heading, "Environmental Support."  (*PageID*# 720).  The note contains no other information about why she wants these benefits without which it merely documents what all applicants for Social Security benefits and Medicaid want – Social Security benefits and Medicaid.  By reading these disparate and unrelated two notes

12

together, the ALJ stretched their reasonable meaning too far to constitute substantial evidence for rejecting Dr. Patel's opinions.

The ALJ also rejected Dr. Patel's opinions by placing "great weight" on the opinions of the non-examining state-agency medical sources, Dr. Katz and Dr. Dietz. (*PageID* at 50). Unlike treating physicians, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Gayheart,* 710 F.3d at 376 (citation omitted). The ALJ found that the opinions of Drs. Katz and Dietz were due great weight because they were "generally supported by the record of the claimant's unremarkable mental status examinations ...." (Doc. #6, *PageID* at 50). Although supportability is a factor for the ALJ to consider, substantial evidence does not confirm her reason for applying this factor to these medical sources' opinions. This is due to the ALJ's error, discussed above, in overlooking or ignoring the many psychiatric signs and symptoms documented in Plaintiff's treatment records. Additionally, Dr. Katz reviewed the claim file on July 22, 2011, when it contained mental health notes only through June 2011, less than a month after Plaintiff's claimed disability onset. (*PageID*# 143). The record Dr. Dietz reviewed was only marginally more complete. He reviewed the file on November 2, 2011,

13

and he reviewed additional mental health notes, but only through October 18, 2011, 4 months after Plaintiff's claimed onset date. Further, neither psychologist reviewed treating psychiatrist Dr. Patel's opinions. (*PageID#* 153). Because the non-treating, nonexamining sources reviewed a significantly incomplete record, their opinions were not substantively probative of Plaintiff's mental work abilities or limitations. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (non-examining sources not substantial evidence in light of evidence they reviewed an incomplete record); *cf.* Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *3 (July 2, 1996) (opinions from a non-examining source may outweigh a treating specialist if they review a "complete case record that includes a medical report from a specialist ...."). In contrast, as explained previously, Dr. Patel's opinions – i.e., those of a treating board-certified psychiatrist – that identify Plaintiff's marked limitations in her mental work abilities – were based on many psychiatric abnormalities documented in the treatment notes, which the ALJ improperly ignored or overlooked.

Additionally, both Dr. Katz and Dr. Dietz adopted a previous ALJ's assessment of Plaintiff's mental residual capacity without explaining why they did so. These record-reviewers likewise failed to refer to specific supporting medical or psychiatric evidence. (Doc. #6, *PageID#*s 145-46). These problems were probably due to the fact that they reviewed an incomplete record. Still, there is no indication that they updated their opinions after the medical record became more complete. Essentially, their opinions are conclusory

14

and, therefore, are not due any significant weight when they conflict with the opinions of Plaintiff's treating specialist. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 650-651 (6th Cir. 2011) (cursory nature of opinions provided by a record-reviewing physician insufficient to support ALJ's assessment of the plaintiff's residual functional capacity). *Walker v. Secretary of HHS*, 980 F.2d 1066, 1071-1072 (6th Cir. 1992) (a record-reviewing physician's assessment of residual functional capacity is not entitled to dispositive weight when the physician failed to give a reason for disagreeing with the opinion of a treating physician).

The ALJ's failure to consider the relevant factors here was not harmless as the factors weighs in favor of deference to Dr. Patel's opinions. First, Dr. Patel treated Plaintiff regularly at Day-Mont West Behavioral Health where Plaintiff was seen throughout the period at issue. Second, the nature of the treatment was focused on her mental impairments, which are the primary cause of her mental-work limitations. Third, Dr. Patel supported his opinions by identifying Plaintiff's psychiatric signs and symptoms. And, as detailed above, those findings are consistent with the underlying treatment notes. Finally, Dr. Patel is a specialist – a board-certified psychiatrist. In this light, it cannot be said that Dr. Patel's opinions are "so patently deficient that the Commissioner could not possibly credit it ...." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)

Accordingly, Plaintiff's challenges to the ALJ's weighing of the medical source

opinions are well taken.[5]

## B. <u>Remand for Benefits</u>

Remand is warranted when an ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F3d at 746.  Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where the evidence of disability is either overwhelming or strong while

---

[5] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's challenge to the ALJ's decision is unwarranted.

16

contrary evidence is weak.  *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is warranted in the present case because the evidence of disability is either overwhelming or strong while contrary evidence is weak. The overwhelming or strong evidence consists of the opinions provided by treating specialist Dr. Patel and the treatment records supporting his opinions.  This evidence is overwhelming or strong because the only contrary opinions are those of the record-reviewing medical sources who failed to review a complete record and reached conclusory opinions about Plaintiff's residual functional capacity.  The ALJ, moreover, acknowledged that, "Dr. Patel's function-by-function assessments (Exhibits C7F, C8F, C12F), if supported by the record, would indicate that the claimant would not be able to perform work at any exertional level as a result of marked limitations in the ability to perform mental work-related tasks...."  (Doc. #6, *PageID* at 49).  Because substantial evidence does not contradict Dr. Patel's opinions about Plaintiff's markedly limited mental work abilities, the evidence of Plaintiff's mental disability is either overwhelming or strong while contrary evidence is weak if not wholly absent from the record.

**IT IS THEREFORE RECOMMENDED THAT:**

1.   The Commissioner's non-disability decision dated December 11, 2012 be VACATED;

2.   Plaintiff Burnadette D. Burns's application for Supplemental Security Income be REMANDED to the Social Security Administration under Sentence 4 of 42 U.S.C. §405(g) for payment of benefits consistent with a

Decision adopting this Report and Recommendations and with the Social Security Act; and

3.      The case be terminated on the Court's docket.


July 8, 2015

                                        _____s/Sharon L. Ovington_____
                                            Sharon L. Ovington
                                    Chief United States Magistrate Judge

18

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).